[Sac. No. 1443. In Bank.—September 25, 1906.]

## WESTERN UNION TELEGRAPH COMPANY, Appellant, v. CITY OF VISALIA, Respondent.

TAXATION—FEDERAL FRANCHISES TO TELEGRAPH COMPANY.—The franchises granted to the Western Union Telegraph Company by the act of Congress of April 24, 1866, to construct, maintain, and operate its lines of telegraph over the public domain and across and under navigable waters, and along the military and post roads of the United States, in such manner as not to interfere with ordinary travel thereon, are not subject to state taxation, directly or indirectly; and a city has no right to assess and tax the same when exercised upon its streets.

ID.—MUNICIPAL ORDINANCE—POLICE POWER—REGULATION OF POLES AND WIRES—AGREEMENT FOR USE BY CITY—TAXABLE FRANCHISES NOT GRANTED.—A city may, under its police power, pass an ordinance regulating the placing of telegraph poles and wires so as to prevent unreasonable obstruction of travel, but cannot deprive it of its right to construct and maintain them. An ordinance authorizing their construction, and permitting them to remain where placed, in consideration of the telegraph company's written agreement to permit their use by the city for certain purposes, does not grant an effective municipal franchise having a real existence distinct from its federal franchise, which may be taxed by the city.

ID.—VOID ASSESSMENT—INJUNCTION TO RESTRAIN LEVY AND SALE.—A purported assessment of such municipal franchise, under the ordinance, is void; and an attempt to levy upon and sell the poles and wires to satisfy the same may be properly restrained by injunction.

APPEAL from a judgment of the Superior Court of Tulare County. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Brown & Wells, R. B. Carpenter, and Beverly L. Hodghead, for Appellant.

H. T. Miller, for Respondent.

McFARLAND, J.—The plaintiff is a corporation organized under the laws of the state of New York and engaged in the telegraph business. It has been in existence as such corporation since before July 24, 1866. The defendant, the city of Visalia, is a municipal corporation organized and existing under the laws of the state of California. Plaintiff has numerous lines of telegraph running through many parts of California and other American states and adjoining countries, and one of its lines runs through the streets of the defendant to the extent of three miles of poles and twelve miles of wires. The defendant assessed for the year 1904 all these poles and wires and all other tangible property of plaintiff within said boundaries, and all the taxes levied upon such property were paid by plaintiff; but defendant for said year also assessed plaintiff for "a franchise granted by the city of Visalia, $1500," and levied a tax thereon of thirty dollars, and was about to levy upon and sell all plaintiff's said poles and wires to satisfy said tax, when plaintiff commenced this action to restrain such sale. Judgment went for defendant in the trial court, and from the judgment plaintiff appeals, bringing up the judgment-roll and a bill of exceptions. As respondent does not make any point as to the remedy asked by appellant, we will assume for the purpose of this appeal that the remedy is a proper one, and determine the case, as both parties seem to want it determined, upon its real legal merits.

The case was tried by the court without a jury upon a stipulated statement of facts, with leave to either party to introduce further evidence, and some further evidence was introduced by plaintiff. The character of plaintiff, and its rights, franchises, and immunities, have been before this court in other cases, and particularly in the case of *San Francisco* v. *Western Union Tel. Co.*, 96 Cal. 140, [31 Pac. 10]. It was

determined in that case—and is the law—that by an act of Congress passed April 24, 1866, (14 U. S. Stats. at Large, p. 221,) and the subsequent acceptance of its terms by the appellant herein, the appellant was granted the franchise of constructing, maintaining, and operating its lines of telegraph over the public domain and across and under navigable waters, and along the military and post roads of the United States [U. S. Comp. Stats. 1901, p. 2707], in such manner as not to obstruct or interfere with ordinary travel thereon; that by section 3964 of the Revised Statutes of the United States, it was provided—as Congress had the right to provide—that "all public roads and highways while kept up and maintained as such are declared to be post roads," and by section 2618 of the Political Code of this state it is provided that public "highways" are "roads, streets, alleys," etc., laid out, erected, and dedicated to the public; that by said act of Congress, and its acceptance by appellant, the latter became an instrumentality of the United States in carrying out its governmental functions, and that therefore under the principle declared in *McCulloch* v. *Maryland,* 4 Wheat. 316, the franchises granted plaintiff by said act of Congress are not subject to state taxation either directly or indirectly. Therefore the respondent had no authority to assess and tax any federal franchise enjoyed by appellant and exercised upon the streets of respondent. This principle respondent admits, but it contends that the franchise which it assessed was the franchise granted by respondent, and that its assessment was not, therefore, the assessment of a federal franchise; and whether or not this is so is the question to be determined on this appeal.

On the twentieth day of February, 1892, the trustees of respondent passed a certain ordinance, designated as ordinance No. 69, which was to take effect only upon the filing by appellant with the clerk of the city a written acceptance of such ordinance; the respondent contends, and the court found, that by said ordinance a franchise was granted to appellant, and it is contended and found that the franchise assessed by respondent is the franchise which is averred to have been created by said ordinance. If that ordinance did not create a franchise, then the attempted assessment was on something which had no existence. This case therefore differs

from *Western Union Tel. Co.* v. *County of San Joaquin*, 141 Cal. 264, [74 Pac. 856], because in that case it did not appear from the pleadings that the plaintiff there did not have some franchise from the city of Stockton different and in addition to its federal franchise.

The appellant had erected and was using its lines of poles and wires through what were afterwards streets of the city of Visalia before said city was incorporated, and has ever since used the same line. The said ordinance No. 69, passed February 20, 1892, with its acceptance by appellant is as follows:—

"Section 1. Be it ordained by the city council of the city of Visalia, state of California, that the Western Union Telegraph Company, its successors and assigns, are authorized to erect and maintain on the streets, alleys and public ways of said city the poles and fixtures and wires necessary for the purpose of supplying the citizens of said city and the public communication by telegraph, or other improved electrical device, such use to be and continue upon the terms and conditions hereinafter stated.

"Section 2. The location of the poles and lines now in use is hereby approved, subject to the provisions of this ordinance, and provided the same shall be made to conform with the requirements of this ordinance and the location of all poles and lines now in use, or extensions thereof, shall be under the direction and control of the city council of the said city.

"Section 3. Said poles and wires shall be placed and maintained so as not to interfere with travel on said highways, and said company shall hold said city free and harmless from all damages arising by reason of any abuse of said occupancy. This grant is made, and is to be enjoyed, subject to such reasonable regulations and ordinances of a public nature as said city council of said city is authorized and sees proper at any time to adopt not destructive to the rights herein granted.

"Section 4. The right of use herein given shall not be exclusive and the city council of said city reserves the power to grant a like right of way to any other telegraph company; the same however, not to interfere with the reasonable and proper exercise of the privileges herein granted.

"Section 5. In consideration whereof, said Western Union

Telegraph Company shall, and by the acceptance of this ordinance does, agree to allow the city council of said city to attach at any time to the top cross-arm of any of said poles, where practicable, the city fire alarm and police wires, and said poles are hereby made a municipal instrumentality for that purpose; provided, however, said attachment shall be so made as not to interfere with said company's use, and said attachment shall be made and maintained under the direction of said company's manager in said city of Visalia.

"The said company shall and will furnish for the said city the use of its poles for the attachment thereto of its fire alarm boxes, without charge to said city.

"Section 6. This ordinance shall take effect on and after its passage and the filing by said company of unconditional acceptance thereof in the office of the clerk of said city of Visalia, and shall be published in one issue of the Tulare County Times, a newspaper printed and published in said city of Visalia.

"Section 7. That whenever said company ceases to operate a telegraph line in said city of Visalia and ceases to use the said poles and lines herein provided for in the operation of its line of telegraph then said company shall remove said lines and poles from the streets and alleys of said city within sixty days from date that said company so ceases to use and operate said lines.

"Section 8. This grant is made on condition that all poles used by said Western Union Telegraph Company within the city limits shall be of the uniform height of twenty-six feet above the surface of the ground, and shall be maintained at such height, without any splicing, relative to the sidewalks of said city as the common council may designate.

"Section 9. All ordinances and parts of ordinances, orders and resolutions upon the subject of telegraph poles, wires, etc., of previous date, in so far as the same relates to the Western Union Telegraph Company, are hereby repealed and annulled."

SAN FRANCISCO, CAL., Feb. 20, 1892.

"To his Honor, The Mayor, and the Honorable City
    Council, Visalia, Cal.

"Gentlemen: The Western Union Telegraph hereby accepts your ordinance No. 69, passed the 10th day of February, 1892,

and files hereby this its unconditional acceptance thereof, in the office of your city clerk.

> "Very respectfully,
>
> "THE WESTERN UNION TELEGRAPH COMPANY,
>
> "By FRANK JAYNES, Supt."

The court found that prior to the passage of this ordinance "the plaintiff applied to defendant herein the city of Visalia for the privilege *and franchise* of constructing, maintaining, and operating plaintiff's telegraph lines, poles, and structures in the streets, alleys and public ways of said city of Visalia," and that said ordinance was passed in pursuance of such application, and that "said ordinance, *and franchise* were duly accepted in writing by plaintiff." If this can be construed to mean literally that plaintiff really applied for a *franchise, eo nomine,* to construct and operate a telegraph line through the streets of the city, then it would have no support in the evidence and the judgment would have to be reversed for that reason. The word "franchise" is not used in the ordinance, and there is no pretense in it of the granting of a right to "operate" the telegraph line. The only evidence on the subject is the testimony of plaintiff's superintendent, F. H. Lamb. He said: "I am acquainted with the franchises of the Western Union Telegraph Company on the Pacific Coast. The matter of the application for a franchise, if any were made, would be a part of my duties. We have no franchise in the city of Visalia granted by the city of Visalia or the county of Tulare for any purpose." On cross-examination he was asked: "Now, Mr. Lamb, at any time prior to the month of February, 1892, did not the Western Union Telegraph Company, through you, make an application to the city of Visalia for a franchise to erect its poles along the city streets of Visalia and to string its wires thereon"; and to this question he answered as follows: "I do not understand that the application was made, as it was well understood by this company that the act of Congress of 1866 gave the Western Union Telegraph Company the franchise to erect its telegraph lines and operate them over all portions of the public domain, over all post routes, and also that the state of California gave to all telegraph companies similar authority. The application that was made to the city of Visalia was in the nature of a police

regulation in order to settle the question as to the location of our poles, the height of wires above ground, etc., in order to prevent the lines which we erected in the streets from being subsequently disturbed by some whim of a street official.

"Q. Now in pursuance of that application Mr. Lamb, there was an ordinance passed by the board of trustees on February, 1892, which granted to your company some rights in the streets, was there not?

"A. There was an ordinance passed which prescribed that the location of the poles and wires then erected was approved.

"Q. It is the same ordinance that has been set forth here in the complaint and statement of fact?

"A. Yes, sir."

In the face of this evidence we do not think that the court intended to find that the plaintiff applied for what it called or understood to be a "franchise." We think that the finding can be and should be construed to mean merely that in the opinion of the court the ordinance 69 did, in law, create a franchise. and that therefore plaintiff can be said to have applied for a franchise. And construing it in that sense, the case can now be here decided on its merits, without the necessity of ordering a new trial upon a point that would only cause delay.

The real question, therefore, is, as before stated, Does the ordinance 69 create a "franchise"?—and, in our opinion, it does not. If it can be construed as an attempted granting of an original franchise to operate a telegraph line through the streets of the city, it would be merely an empty form of granting what the plaintiff already had and of which the city could not deprive it. The plaintiff had that right not only from the act of Congress above referred to but also from section 536 of our Civil Code, which provides that "telegraph corporations may construct lines of telegraph along and upon any public road or highway." But we do not think that the ordinance purports to grant any "franchise." While the appellant had the right, of which the city could not deprive it, to construct and operate its lines along the streets of the city, nevertheless it could not maintain its poles and wires in such a manner as to unreasonably obstruct and interfere with ordinary travel; and the city had the authority, under its police power, to so regulate the manner of plaintiff's placing

and maintaining its poles and wires as to prevent unreasonable obstruction of travel. And we think that the ordinance in question was not intended to be anything more, and is nothing more, than the exercise of this authority to regulate. But such regulation is not the granting of a franchise; it is a restriction of and burden upon a franchise already existing; it is not an original and affirmative granting of anything in the nature of a franchise. Indeed, the ordinance and its acceptance by plaintiff—which acceptance was necessary to give it any effect—was in the nature of a contract between the parties. The plaintiff's poles and wires were still in the same place in which they had been for many years; and by the ordinance the city agreed in writing that the poles and wires as they then stood were in a proper place and might remain there if plaintiff would agree to allow the city to use them for certain purposes, and plaintiff by accepting the ordinance so agreed. Such was evidently the purpose of the ordinance, and we do not see in it the creation of anything in the nature of a franchise.

Therefore, the assessment was for an asserted franchise which had no existence.

The judgment is reversed, with directions to the court below to render judgment as prayed for in its complaint.

Lorigan, J., concurred.


SHAW, J., concurring.—I concur. I think, however, that the ordinance in question was intended to grant a certain right to use a portion of the public streets, and that, as it purports to be a grant by public authority of a right to the use of public property, it does purport to grant a franchise. The fact that it also regulates the manner of the use does not change its character in this respect. But in so far as it purports to grant such right, it merely attempts to give the plaintiff that which it already had, and was of no legal effect whatever. The assessment, being specifically upon that so-called franchise, was upon a thing which had no real existence and which could not have any value. It was, therefore, necessarily void, and its collection in the manner here attempted should be enjoined.

Angellotti, J., Sloss, J., and Beatty, C. J., concurred with Shaw, J.